SUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM A. BARNARD, JR.

                  Petitioner,            **DECISION AND ORDER**

     -vs-                       No. 03-CV-0362(VEB)

JAMES BURBARY, Supt.,

                  Respondent.

_____

### INTRODUCTION

Petitioner, William A. Barnard, Jr. ("Barnard"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Niagara County Court on charges of use of child in a sexual performance (N.Y. Penal Law § 263.05). The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction here at issue stems from an incident in which Barnard allegedly photographed a fourteen-year-old girl posing nude in a sexually explicit manner in July 1999, at his house, after providing alcohol to her. The investigation commenced after the Niagara County Sheriff's Department received suspicious photographs from the police department in Hudson, Ohio, which had been turned in by Konica, a film processing company. Konica in turn had received the film from a pharmacy in Middleport, New York. The name on the envelope was "Bill Barnard," which could have referred to petitioner, or his son, William "Billy" Barnard, III. Because Billy was away at college and would not be home until Thanksgiving, the investigation was held in abeyance for a time.

-1-

When he returned from college, the police questioned petitioner's son, who identified the girl. He admitted that he had had sexual relations with her on several occasions but denied taking the photographs. He suggested that either his younger sister or his father had taken the photographs. On December 15, 1999, a search warrant was executed at Barnard's home. He was arrested on a felony complaint and indicted on seven counts of Use of a Child in a Sexual Performance (N.Y. Penal Law § 265.03) and one count of Unlawfully Dealing with a Child in the First Degree (N.Y. Penal Law § 260.20(2)).[1] Barnard waived his rights and agreed to speak with the police, admitting that he had taken suggestive photographs of the victim, and another girl, Regina Soulvie ("Regina"), fully clothed, in the living room of his home. He denied taking any other photographs of the victim, including the ones forming the basis of the indictment.

At Barnard's jury trial in Niagara County Court (Broderick, J.), the victim testified that she had met Soulvie and Erin Barnard ("Erin"), the petitioner's daughter, in June 1999. She stated that she spent three to four nights out of the week at Erin's house over night. The victim recalled that Barnard had taken photographs of her and Regina while they were "messing around" in his living room; he instructed them to pose in various sexually suggestive positions. In these photographs, both girls were clothed. The photographs that were in issue were taken out behind Barnard's house at the bonfire pit late at night; the victim could not recall the specific date but said that it was sometime after July 4th and before July 23rd. The victim testified that Barnard gave her two to four cans of beer which she consumed within one hour; she stated that the alcohol caused her to feel "dizzy." According to the victim, Erin also was at the bonfire pit

---

[1] During the search of Barnard's home, the police found other photographs of other girls taken in various stages of undress. The defense successfully precluded the prosecution from introducing these photographs at trial.

but had gone into the house before Barnard started taking the pictures.

Barnard told the victim to "take off [her] clothes" and "told [her] how to pose," and then he "took pictures as [she] was taking them off." T.178.[2] The pictures depicted the complainant exposing her breasts and her vagina. Barnard stated that "[i]t was for his son [William "Billy" Barnard, III] when he went off to college to remember [her] by." *Id.* Barnard "told [her] how to pose." T.179. The victim admitted that she was having a sexual relationship with Billy, who was eighteen years-old at the time.[3]

Donna Horner ("Horner"), the store clerk from the pharmacy in Middleport where Barnard had dropped off the film, testified at trial. Horner related that both petitioner and his son used to bring film in to the pharmacy, and they distinguished themselves for her so that she would know who was who (petitioner was "W. Barnard" and the son was "the III"). Horner identified the film envelope dropped off on July 21st; it was not returned from the film processing company until July 23rd. (Because this exceeded the normal twenty-four hour turn-around time, there was no processing fee. The pharmacy kept the envelope in order to get credit from the film processing company.) Horner testified that Barnard picked up the photographs at issue on July 23, 1999.

Over the prosecution's objection, the defense called several witnesses to testify about the victim's sexual behavior at another party at Barnard's bonfire pit. Erin, Barnard's daughter, and Dashun Barnes, testified that they saw the victim and a boy named Steve in the back of a car and

---

[2] Citations to "T.__" refer to the trial transcript.

[3] Billy testified that he had been charged with sexual misconduct as a result of his relationship with Melissa. He said that he was questioned about the photographs by the police but stated that he had never seen them before trial.

that the victim was "giving him head." T.474, 516. According to these witnesses, a girl named Lisa Gillis ("Lisa"), who liked Steve, attempted to pull the victim out of the car to beat her up. Erin testified that her father came outside and told everyone to leave. T.475. According to Erin, the victim left at about 1:30 a.m. with Steve.

Barnard testified in his behalf that he recalled a party at the bonfire pit at which the victim was present. He recalled that at one point, his daughter and Lisa came into the house and were very upset with the victim. He testified that he told everyone to leave the party. He telephoned the victim's house to tell her mother to expect Melissa home earlier than expected; apparently, the victim had been going to spend the night at the Barnard's house. The next day, the mother asked him why her daughter had come home early. Barnard testified that he replied that he did not believe the victim's behavior was appropriate for a sixteen-year-old. At that point, the victim's mother told him that her daughter was only fourteen. Barnard denied taking any nude photographs of the victim, although he admitted taking the  photographs of the victim and Regina in his living room.

On February 9, 2001, the jury returned a verdict convicting Barnard on the counts alleging use of a child in a sexual performance in violation of N.Y. Penal Law § 265.03. The jury acquitted him of the charge of unlawfully dealing with a child by supplying alcohol to the victim. He was sentenced to an indeterminate sentence of twenty-months to five years in prison, with post-release supervision of three years. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction. *People v. Barnard*, 295 A.D.2d 999, 743 N.Y.S.2d 3 (App. Div. 4th Dept.), *lv. denied*, 98 N.Y.2d 708, 778 N.E.2d 556, 749 N.Y.S.2d 5 (N.Y. 2002).

On July 25, 2002, Barnard collaterally attacked his conviction by means of a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.30.[4]  In support of his motion, Barnard raised the following arguments: (1) the prosecution presented false testimony to the grand jury and to the trial jury; and (2) the prosecutor failed to disclose material, favorable evidence to the defense, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In particular, Barnard claimed that the prosecution failed to disclose a report dated July 21, 1999, received from the Hudson, Ohio police department. The trial court denied the motion on the basis that "[a]ll of the issues raised in [the] motion were (or, with due diligence, could have been) adequately preserved in the record and available for normal appellate review[.]" County Court Order dated August 20, 2002, at p. 2, Petitioner's Exhibit 13. The trial court clearly was relying on the procedural rule set forth C.P.L. § 440.10(2)(c), which provides that the court "must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure . . . to raise such ground or issue upon an appeal actually perfected by him[.]" N.Y. Crim. Proc. Law § 440.10(2)(c).

This habeas petition followed in which Barnard raises the following grounds for relief: (1) the prosecutor knowingly suborned perjury by witnesses Donna Horner and Kristen Taberski; (2) the grand jury testimony of Horner, William DuBois and Investigator Taylor were false; (3)

---

[4] Because C.P.L. § 440.30 does not provide a basis for a motion to vacate; it only specifies the procedural requirements pertaining to a motion to vacate the judgment pursuant to C.P.L. § 440.10 (illegal conviction) or § 440.20 (illegal sentence). Based on the substance of the allegations, therefore, the trial court deemed the motion to be brought pursuant to C.P.L. § 440.10.  *See* County Court Order dated August 20, 2002, Petitioner's Exhibit 13.

the prosecution "knowingly withheld evidence favorable to the defense untill [*sic*] such a time as it was unuseable to the defense at trial or on direct appeal"; (4) the prosecution "did not prove all the elements of the crime and the evidence does not support the conviction" (insufficiency of the evidence and weight of the evidence); (5) the trial court improperly limited the defense inquiry into the victim's sexual behavior; (6) the prosecution's use of an E.L.M.O. device (an overhead projector) to enlarge the nude photographs of the victim was prejudicial; and (7) the sentence was harsh and excessive.

Respondent contends that Barnard's *Brady* claim is unexhausted. However, the allegations in support of this claim appear to have been raised in support of Barnard's C.P.L. § 440.10 motion. The claim is arguably procedurally defaulted, due to the motion court's reliance on C.P.L. § 440.10(2)(c), but respondent has not raised procedural default as an affirmative defense and therefore has waived it. *See Larrea v. Bennett*, 2002 WL 1173546, at *12 n. 15 (S.D.N.Y. May 31, 2002) ("Respondent does not argue that the state court's reliance on C.P.L. § 440.10(2)(a) as a separate basis for rejecting this claim created a procedural default. Thus, respondent has waived the affirmative defense of procedural default, and the Court may consider this branch of petitioner's ineffective assistance of counsel claim on the merits.") (citing *Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999) ("[S]tate-court procedural default . . . is an affirmative defense, and [ ] the state is 'obligated to raise procedural default as a defense or lose the right to assert the defense thereafter.'") (quoting *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996)).

Finally, the Court observes that Barnard has completed his sentence and was released from prison on February 23, 2006. A petitioner may file a petition for habeas relief only if he is

"in custody." *Wheel v. Robinson*, 34 F.3d 60, 63 (2d Cir. 1994) (citing 28 U.S.C. § 2254(a)).

However, § 2254(a) requires only that "'the habeas petitioner be "in custody" under the

conviction or sentence under attack at the time [the] petition is filed.'" *Id.* (quoting *Maleng v.*

*Cook*, 490 U.S. 488, 490-91 (1989) (*per curiam*) (in turn citing *Carafas v. LaVallee*, 391 U.S.

234, 238 (1968)); *accord Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (holding that the "in custody"

provision only requires that the petitioner be in custody at the time the petition is filed). Thus,

because Barnard filed his habeas petition while he was incarcerated, he satisfies the "custody"

requirement of § 2254. The Supreme Court has held that a habeas petition challenging a criminal

conviction is "not necessarily mooted when the petitioner is released from prison, as collateral

consequences of that conviction may still impinge on the petitioner post-release, and therefore a

case or controversy may continue to exist." *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002)

(citing *Pollard v. United States*, 352 U.S. 354, 358 (1957); *Sibron v. New York*, 392 U.S. 40,

54-56 (1968) (citing deportation, inability to become a citizen, impeachment evidence in future

criminal trials, and increased future sentences as examples of collateral consequences and

asserting a presumption that these consequences attach to criminal convictions post-release)).

Once a litigant's sentence has expired, however, "some concrete and continuing injury other than

the now-ended incarceration or parole-some 'collateral consequence' of the conviction-must

exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7 (quoting *Carafas v. LaVallee*, 391

U.S. 234, 237-38 (1968)).

 For petitioners such as Barnard, who are challenging the validity of their convictions on

federal habeas, the Supreme Court has "been willing to *presume* that a wrongful criminal

conviction has continuing collateral consequences" so that their habeas petitions do not become

moot after their release. *Id.* at 8 (emphasis added). In light of the presumption of collateral

consequences applicable here, the Court finds that, notwithstanding his release from

incarceration, Barnard's habeas petition presents a justiciable "case or controversy" for purposes

of conferring subject matter jurisdiction under Article III, Section 2 of the United States

Constitution. For the reasons set forth below, however, the petition is denied.

**DISCUSSION**

<u>Standard of Review</u>

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal

review of his conviction must demonstrate that the state court's adjudication of his federal

constitutional claim resulted in a decision that was contrary to or involved an unreasonable

application of clearly established Supreme Court precedent, or resulted in a decision that was

based on an unreasonable factual determination in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

<u>Merits of the Petition</u>

**1.       Presentation of perjured testimony at trial**

Barnard contends that the prosecutor knowingly allowed Donna Horner to  testify falsely

at trial. Horner was the store clerk to whom Barnard presented the roll of film containing the

nude images of the victim. To the extent that the Court can decipher this argument, it appears to

be based solely on alleged discrepancies in the dates that Barnard supposedly dropped off the

film, when the film was processed by Konica, and when Barnard allegedly went to pick up the

film. Even assuming Barnard's allegations to be true, this information is wholly immaterial to

the prosecution's case against Barnard, and it has nothing to do with his guilt or innocence of the

charges. As to witness Kristen Taberski, Barnard merely says that she testified falsely–he provides no specifics and no basis for why he believes that she perjured herself. The claims are patently frivolous and are dismissed.

**2.      Claims relating to the grand jury proceeding**

Barnard contends that several witnesses testified falsely before the grand jury. To the extent that Barnard is asserting defects in the grand jury proceeding, such a claim is not cognizable on habeas review because he was convicted by a jury after a trial. The trial jury's guilty verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was "in fact guilty as charged beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 68 (1986); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (holding that habeas petitioner's "claims of impropriety before the grand jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" . . . were "cured in the trial before the petit jury, which convicted"). Accordingly, this claim is not cognizable on habeas review.

**3.      *Brady* claim**

Barnard contends that the prosecutor violated its discovery obligations under *Brady v. Maryland*, *supra*, by withholding "helpful evidence, I.E. [*sic*] Police Reports from Hudson Ohio." Petitioner's Response at 6 (Docket #9). The item on which Barnard's claim focuses is a July 21, 1999 police report; his explanation as to how this was allegedly favorable to the defense is less than clear. Barnard has attached the report in question to his habeas petition as Exhibit 1.

To the extent that the prosecution knows of material evidence favorable to a criminal

defendant, it has a due process obligation to disclose that evidence.  *See*, *e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 431 (1995); *Brady*, 373 U.S. at 87 (holding that suppression by the prosecution of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").  *Brady* matter includes not only exculpatory evidence going to the heart of the defendant's guilt or innocence, but also impeachment evidence having the potential to undermine the credibility of a significant prosecution witness. *See*, *e.g.*, *Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (A "jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence."). The Supreme Court has explained that there are three components to a true *Brady* violation: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The prosecution is deemed to have constructive knowledge of "evidence 'known only to police investigators and not to the prosecutor.'" *Id.* at 280-81 (quoting *Kyles v. Whitley*, 514 U.S. at 437).  Thus, *Brady* imposes upon each individual prosecutor a "duty to learn of any favorable evidence known to the others acting on the government's behalf in [the defendant's] case, including the police.'" *Id.* (quoting *Kyles*, 514 U.S. at 437).

The Court turns first to the issue of suppression of the July 21, 1999 police report. As respondent points out, the parties conducted "open file" discovery in this case. As an exhibit, petitioner submitted a copy of the prosecutor's June 13, 2000 letter to defense counsel in which he states that he is enclosing the "[r]eport from Hudson, Ohio Police Department dated July 21,

1999. This report was marked as Grand Jury Exhibit 31 for identification, but not received into evidence." Petitioner's Exhibit 9a. Later in the letter, the prosecutor states that he is "aware of no evidence which is exculpatory or helpful to the defense which we must report pursuant to our obligations under *Brady vs. Maryland*. As defense counsel is aware, the victim was given and did consume alcohol at the time of the offenses in the indictment." *Id.*

Based on the foregoing, it appears to the Court that defense counsel in fact was provided with the report in question. The Court notes that defense counsel never made any motions to compel the production of the report after receiving the June 13th letter. Thus, the Court finds that there was no "suppression" of the report, which is fatal to Barnard's *Brady* claim.

Moreover, the Court finds that the report is neither exculpatory nor of impeachment value, which further fatally undermines his claim. Barnard contends that, based on the report, it was "impossible for the petitioner to have picked up the photographs on the 23ed [*sic*] of july [*sic*] when by police report they were not released to be returned un-till [*sic*] the Hudson Ohio police were contacted by the Niagara County Sheriff's Dept. which did not happen until the 4th of August[.]" Petitioner's Response to Answer at 3 (Docket #10). Barnard's argument, albeit somewhat creative, misses the mark. What appears to have happened is that a set of the photographs were released to the pharmacy for Barnard to pick up, and another set was sent to the Niagara County Sheriff's Department for further investigation. As Investigator Taylor of the Niagara County Sheriff's Department noted in his report, "[w]hen photographs of questionable content are identified by Konica employees, the Hudson P.D. is notified. They in turn send *copies* of the photograph(s) to the local jurisdiction from which they originated for a determination of criminal code violations." *See* Petitioner's Exhibit 4 (emphasis supplied). Thus,

it is certainly possible for Barnard to have picked up a set of the photographs on July 23rd, even though the Niagara County Sheriff's Department did not receive copies until August 4th.

Moreover, this information has no bearing whatsoever on whether Barnard was guilty of inducing the victim to pose nude for him while he photographed her, and therefore does not constitute exculpatory evidence. Finally, even assuming that it had some impeachment value (which the Court does not find to be the case), it certainly did not have the potential to undermine the credibility of a significant prosecution witness. *See Giglio*, 405 U.S. at 154-55.  In sum, Barnard's *Brady* claim is without any factual or legal basis and must be denied.

**3.      Claim relating to testimony given at the *Huntley* hearing**

Barnard claims that Investigator Taylor "knowingly gave false testimony" at the hearing held pursuant to *People v. Huntley*, 15 N.Y.2d 72, 78 (1965), to determine the voluntariness of petitioner's statement to the police. Barnard in particular contends that Investigator Taylor lied when he testified that he "did not see the petitioner at his home on December 15, 199 [*sic*], when he executed a search warrant at the home of the petitioner." Petitioner's Response at 5 (Docket #9). According to Barnard, Investigator Taylor "later changed the testimony to seeing the petitioner at his home but not talking to him at that time." *Id.*

The Court has reviewed the *Huntley* hearing testimony and concludes that the claim is, like the one relating to Horner's alleged perjury, wholly without merit. The prosecutor asked Investigator Taylor whether "anyone [was] home when [he] executed the search warrant?" H.18. Taylor replied that "Mr. Barnard was there, the father. His daughter, Erin, Mrs. Barnard and a Kristen Tuberski [*sic*]." *Id.* Several pages later in the transcript, the prosecutor asked, "was [Barnard] asked to come or was he taken into custody?" Taylor replied, "I wasn't privy to that. I

was inside the home when he [Barnard] arrived at the home during the execution of the search

warrant." H.20.[5] Investigator Taylor related that he encountered Barnard at the police station

where he read Barnard the *Miranda*[6] rights and obtained a waiver from him. H.20-21. Although

Investigator Taylor's testimony was somewhat imprecise, Barnard has mischaracterized it and

has greatly exaggerated the importance of any discrepancies. The Court finds it significant that

Barnard does not dispute that he was advised of his *Miranda* rights and that he voluntarily

waived them and agreed to talk to the police. Therefore, the Court is at a loss to understand how

Investigator Taylor's testimony as to whether he actually saw Barnard during the execution of

the search warrant had any bearing on the outcome of the *Huntley* hearing. Accordingly, the

Court rejects this claim as a basis for habeas relief.

**4.      Failure of the prosecution to prove petitioner's guilt**

   **a.      Insufficiency of the evidence**

       Barnard contends that the conviction against him was not supported by legally sufficient

evidence. On direct appeal, the Appellate Division concluded that the evidence was "legally

sufficient to establish that defendant induced the victim to pose for the photographs[.]" *People v.*

*Barnard*, 295 A.D.2d at 999 (citation omitted). The state court also found that the verdict was

not against the weight of the evidence. *Id.* (citing *People v. Bleakley*, 69 N.Y.2d 490, 495, 515

N.Y.S.2d 761, 508 N.E.2d 672 (1987)).

       A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy

burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation marks omitted);

---

[5] Citations to "H.__" refer to the transcript of the *Huntley* hearing.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Einaugler v. Supreme Court of New York*, 109 F.3d 836, 840 (2d Cir. 1997) (quotation marks

omitted). A habeas court must uphold a state criminal conviction if, "after viewing the evidence

in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307,

319 (1979) (emphasis in original); *accord Ponnapula*, 297 F.3d at 179 ("[W]e review the

evidence in the light most favorable to the State and the applicant is entitled to habeas corpus

relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on

the evidence adduced at trial."). In making this assessment, the reviewing court  may neither

"disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*,

870 F.2d 65, 71 (2d Cir. 1989), nor make its own "assessments of the weight of the evidence[.],"

*Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Thus, under this standard a "federal habeas

court faced with a record of historical facts that supports conflicting inferences must

presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any

such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*,

34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

 The victim testified that Barnard took photographs of her while she was undressed at the

bonfire pit behind his house, telling her that the pictures would be a way for his son, Billy, to

remember her by while he was away at college. T.178. (The victim and Billy were in a sexual

relationship at that time; Billy was four years older than the victim.) The victim testified that

Barnard told her how to pose for the photographs, and that she undressed for him after she drank

two to four beers given to her by Barnard. T.179, T.183-89. The victim stated that the beer made

her feel "dizzy." Although the victim could not testify as to the specific date that the photographs

were taken, she recalled that they were taken after July 4th and before July 23rd.

Barnard cannot meet the "rigorous standard," *Wheel*, 34 F.3d at 66, necessary to obtain reversal of his conviction based on a claim of insufficient evidence. Viewing the trial proof in the light most favorable to the prosecution, a rational trier-of-fact could have found Barnard guilty beyond a reasonable doubt of "induc[ing]" the victim, who was less than seventeen years-old, to engage in a "sexual performance." *See* N.Y. Penal Law § 263.05.

### b.      Verdict against the weight of the evidence

To the extent that Barnard claims that the verdict was against the weight of the evidence, the allegation does not present a constitutional question for habeas review. A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d at 495, 515 N.Y.S.2d 761. Since a weight-of-the-evidence claim is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

5.      **Improper limitation on cross-examination of victim**

Barnard contends that he was denied a "fair and impartial trial" because defense counsel

was limited in his ability to question the victim about her sexual behavior when she was at the

petitioner's house on the night the photographs were taken. Barnard states that he "had a right to

bring to the jury's attention the actions of the complaining witness in that 1. She was with a party

guest named Steve for over one hour alone. 2. She was drinking beer that 'Steve' gave her that

night. 3. She was found in the back seat of a car with Steve with little or no clothing on, engaged

in a sex act with Steve." Petitioner's Response to Answer to Petition at 8 (Docket #10).

"The Confrontation Clause of the Sixth Amendment, which applies to the states through

the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to

confront the witnesses against him." *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994)

(citing *Pointer v. Texas*, 380 U.S. 400 (1965)). However, trial court judges retain "wide latitude"

insofar as the Confrontation Clause is concerned to impose "reasonable limits" on

cross-examination cross-examination "based on concerns about, among other things, harassment,

prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only

marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *accord Henry*, 22

F.3d at 1214.  "Generally speaking, the Confrontation Clause guarantees an opportunity for

effective cross-examination, not cross-examination that is effective in whatever way, and to

whatever extent the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). The

Second Circuit has explained that "[c]ross-examination is not improperly curtailed if the jury is

in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's

credibility." *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990) (citing *United*

*States v. Singh*, 628 F.2d 758, 763 (2d Cir.), *cert. denied*, 449 U.S. 1034 (1980)).

It appears that the prosecution, pursuant to C.P.L. § 60.42  (the "Rape Shield Law")

sought to preclude any testimony about the victim's sexual behavior; however, the trial court

held that the provision was not applicable to the case. *See* Petitioner's Brief on Direct Appeal at

35.[7] Petitioner's appellate counsel represented in the brief that "[t]he trial court believed that any

questioning and potential witness testimony concerning the specifics of [the victim's] behavior,

particularly at the second bonfire party, constituted merely a collateral attack upon her credibility

as a witness." *Id.*  The prosecution, on the other hand, represented that the "trial court allowed

the Appellant to cross-examine the victim about an alleged sexual incident at the second bonfire

and to present defense witnesses who testified that on the night of the second bonfire party, the

victim was seen 'giving . . . head' to a young man in his car." People's Brief on Direct Appeal at

3. The prosecution also noted that the trial court ruled that it "would allow testimony about the

victim's sexual behavior after Appellant's counsel explained that the testimony was relevant to

the issue of who took the pictures." *Id.*

During his opening statement, defense counsel brought up this very topic:

> Come to find out during the course of the evening, they're going to testify, the
> evidence will show, that they catch [the victim] in a compromising position with
> Steve in the back of a car. 14 year old girl. And they go tell Mr. Barnard. . . . And
> now here's [the victim] caught with Steve and you'll hear about that.

T.100. The prosecution asked the complainant whether she had "any kind of romantic or sexual

contact with any person at that party[?]" and she answered no. She explained the incident with

Steve, stating that she was "tying her shoes." *Id.* Defense counsel did not press the complainant

---

[7] In the transcripts provided, the Court was unable to find the oral argument on this issue, and the parties
have not provided specific page references.

about this topic on cross-examination, but the defense did elicit testimony from two of the complainant's friends that they saw her performing oral sex on Steve in the back of the car. *See* T.474, 516. Thus, defense counsel was permitted to delve into the complainant's sexual activity at the bonfire parties. Furthermore, defense counsel extensively cross-examined the complainant about her sexual relationship with petitioner's son.

On direct appeal, the Appellate Division did not address this claim specifically, merely including it as one of "defendant's remaining contentions" which were "without merit." *People v. Barnard*, 292 A.D.2d at 999. Thus, it is unclear whether the state court found that there was no error or whether it did find error but concluded that it was harmless. However, the distinction is not material to this Court's analysis; the Court has no difficulty concluding that the Appellate Division's rejection of the claim's merit's was not an "unreasonable application" of clearly established Supreme Court law.

First of all, the Court is not convinced that there was, in fact, a curtailment of petitioner's right of cross-examination. Defense counsel announced in his opening that the jury would be hearing testimony about the complainant's sexual encounter with Steve. Thereafter, defense counsel cross-examined the victim about the encounter with Steve and was permitted to elicit testimony from several witnesses about their observations of the complainant performing oral sex on Steve in the back of a car. A ll of the information that Barnard contends that he "had a right to bring to the jury's attention"–namely that the victim allegedly was discovered performing oral sex on a young man named Steve in the back of a car–*was* put before the jury. Because the jury ultimately heard testimony from two of the complainant's peers about her sexual behavior at the bonfire party after hearing her explanation that she was just "tying her

shoes" with Steve, defense counsel was afforded the opportunity to attempt to portray the complainant as a sexually-experienced and promiscuous young woman who was acting much older than her age. Thus, defense counsel arguably impeached her with the subsequent testimony from the several witnesses. Moreover, defense counsel succeeded in obtaining a jury instruction regarding the affirmative defense that Barnard did not know how old the victim was and had a good faith basis for believing that she was much older than fourteen. T.668-71, 691.

Even if the Court were to conclude that the trial judge improperly curtailed cross-examination, which it does not, any Sixth Amendment error would be considered harmless, regardless of the standard employed. The testimony was not especially important, and it was cumulative to testimony provided by other witnesses. Overall, prosecution's case was strong. *See Van Arsdall*, 475 U.S. at 684; *accord Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005). Because the Court "think[s] it clear beyond a reasonable doubt that [Barnard] would have been found guilty even if [the disputed] cross-examination . . . had been allowed," *Fuller v. Gorczyk*, 273 F.3d 212, 221 (2d Cir. 2001)," *Benn*, 402 F.3d at 107, habeas relief will not issue on this claim.

**6.    Erroneous introduction of prejudicial evidence**

Barnard contends that the prosecutor "presented the photographic evidence in such a way as to not only prejudice the petitioner [but to] also violate Penal Law § 263.15 promoting the use of a child in a sexual performance." Petitioner's Response to Respondent's Memorandum of Law at 10 (Docket #9). Apparently, the petitioner is suggesting that the *prosecutor* committed a crime in the course of this trial by introducing into evidence the nude photographs of the victim that Barnard allegedly took. This argument regarding Penal Law §

263.15 is spurious and will not be addressed further.

The Court turns to Barnard's contention that the prosecutor's use of an "E.L.M.O." device (an overhead projector) to display the photographs of the complainant was prejudicial. Under New York law, "photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered[,]' . . . and . . . should be excluded 'only if [their] *sole purpose* is to arouse the emotions of the jury and to prejudice the defendant[.]'" *People v. Wood*, 79 N.Y.2d 958, 591 N.E.2d 1178 (N.Y. 1992) (quoting *People v. Pobliner*, 32 N.Y.2d 356, 370, 345 N.Y.S.2d 482, 298 N.E.2d 637 (N.Y. 1973) (emphasis supplied)). There is no *per se* rule under New York or federal law prohibiting the introduction of enlargements of photographs. In *Pobliner*, the evidence at issue was enlarged photographs depicting the blood-stained corpse of the deceased in her bed and at the morgue; the New York Court of Appeals upheld the finding that the photographs were relevant and admissible because they confirmed testimony that the victim was asleep in bed when she was murdered and, since they showed "three clustered bullet holes near the left temple," indicated "marksmanship and deliberateness in the killing[.]" *Id.* at 370.

Even on direct appeal, the appellate court's review of a trial court's evidentiary rulings is limited: "When relevance is demonstrated, the question as to whether on balance the jury should be permitted to view such photographs is addressed to the sound discretion of the trial court[.]" The Court is mindful that, on habeas review, its role in reviewing claims of evidentiary error by the state trial court is even more circumscribed. *See*, *e.g.*, *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) ("The finding of error does not, however, determine the outcome of this

appeal. Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial.") (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973) (emphasis in original)). Thus, it matters not whether this Court would have decided to preclude the prosecutor from using the overhead projector; the only issue is whether the decision denied Barnard a "fundamentally fair" trial.

As the complainant was testifying, the prosecutor projected the various photographic exhibits using the E.L.M.O. and had her identify them. The Court agrees with Barnard that enlarging the photographs, which were of a sexually explicit nature, very possibly could have had an inflammatory effect on the jurors. However, the potential for such prejudice is an insufficient basis on which to find reversible error unless the *only* reason for displaying the evidence in that manner was to arouse the juror's passions and prejudice them. *See Pobliner*, 32 N.Y.2d at 369-70 ("Where they are otherwise properly admitted as having a tendency to prove or disprove some material fact in issue, photographs of a corpse are admissible even though they portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury[.]") (internal quotation marks and citation omitted).

The trial court heard oral argument on this issue prior to opening statements. Defense counsel contended that enlarging the photographs would "convey the wrong impression . . . and distort th[e] case" as well as "prejudice the defendant." T.53.  He argued that there was no reason that the photographs could not have been passed to the witness individually for identification and then given to the jury to view in the size and format in which they were returned from the film processing company. The prosecutor commented that defense counsel

had offered no case law to support the proposition that "a visual aid or blowups" could not be

used to allow the jury to "see the photographs clearly and all at once." T.54. After ascertaining

that "all [the prosecutor was] showing [wa]s the actual picture[s]" that were going to be offered

into evidence, the trial court decided to allow the prosecutor to use the overhead projector to

enlarge the photographs because "it will speed up the matter and the jury can see the

photographs after they're properly introduced into evidence." T.57. The court stated that the

jury would "be cautioned that they're to confine their scrutiny to the exhibits themselves and

not reflect on what they saw on this visual aid," and that another cautionary instruction would

be given at the conclusion of the case. *Id.* Thus, the trial court implicitly found that the

prejudicial effect did not outweigh the probative value of the enlarged photographs.

   The Court believes that it would have been better practice to have engaged in the

weighing process on the record. However, given the state and federal precedent discussed

above, it does not appear that trial judge abused his discretion or committed error under state or

federal law. Furthermore, the Court notes that a detailed limiting instruction was given to the

jury.[8] The Supreme Court has held consistently, "'We generally presume that jurors follow their

instructions.'" *Smith v. Texas*, 543 U.S. 37, 46 ( 2004) (quoting *Penry v. Johnson*, 532 U.S. 782,

799 (2001)); *see also Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987) ("We normally presume

that a jury will follow an instruction to disregard inadmissible evidence . . . , unless there is an

'overwhelming probability' that the jury will be unable to follow the court's instructions.");

---

[8] "One cautionary word, the use of these TV sets and what you call the Elmo, it's done – it's a visual aid so
that you can all watch the picture as the witness describes what's in the picture. It's done for your convenience. The
exhibits themselves are the real evidence and you must confine your scrutiny in this case to those exhibits and not
what you saw on the television. It's a magnification, it's somewhat distorted, so I'm going to ask you to keep that in
mind, you know, when you're deliberating on this case, consider only the photographs themselves and not what you
saw on the TV monitors." T.229-30.

*Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (stating that "juries are presumed to follow . . . instructions"); *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 367 (1962) (When a limiting instruction is clear, "[i]t must be presumed that the jury conscientiously observed it."). In this Circuit, in cases where evidence is alleged to have been erroneously introduced, "[l]imiting instructions have been found to militate against a finding of constitutional error." *Yapor v. Mazzuca*, 2005 WL 894918, at *15 (S.D.N.Y. Apr. 19, 2005) (citing *Peakes v. Spitzer*, 04 Civ. 1342, 2004 WL 1366056, at *18 n. 29 (S.D.N.Y. June 16, 2004) ("The jury is presumed to obey a court's curative instruction."); *Green v. Herbert*, 01 Civ. 11881, 2002 WL 1587133 at *16 (S.D.N.Y. July 18, 2002) (holding that admission of prior crimes evidence did not deprive petitioner of a fair trial in light of, *inter alia*, judge's limiting instructions); *Kanani v. Phillips*, 2004 WL 2296128 at *19 (denying habeas petition where "trial judge gave a very specific limiting charge to the jury to ensure that jurors considered information about the uncharged crimes only for appropriate purposes, and not on [petitioner's] guilt or innocence of the crimes charged in the indictment"); *Cruz v. Greiner*, 98 Civ. 7839, 1999 WL 1043961 at *31 & n. 26 (S.D.N.Y. Nov. 17, 1999) (rejecting petitioner's argument that "if you throw a skunk into the jury box, you can't instruct the jury not to smell it" and finding that the court's instruction to disregard inadmissible evidence rendered harmless any prosecutorial misconduct) (citations omitted). Here, the Court has "no reason to believe that the jury in this case was incapable of obeying the curative instructions," *Greer*, 483 U.S. at 766 n. 8. Moreover, the photographic content projected by the E.L.M.O. clearly was admissible; it is merely the size of the image about which petitioner complains.

For the foregoing reasons, the Court cannot find that the prosecutor's use of the

overhead projector amounted to an error of federal constitutional magnitude sufficient to warrant habeas relief. Even if it were erroneous under federal law, which the Court does not find to be the case, the Court is satisfied that Barnard's trial was nevertheless "fundamentally fair," *Taylor v. Curry*, 708 F.2d at 891.

**7.   Harsh and excessive sentence**

Barnard contends that his sentence of twenty months to five years in prison is unduly harsh and excessive. However, a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

The offense for which Barnard was convicted (use of a child in a sexual performance) is a class C felony under New York law. *See* N.Y. Penal Law § 263.05. The sentence of imprisonment for a class C felony must be an indeterminate term with a minimum of at least one year and a maximum of at least three years and no more than fifteen years. *See* N.Y. Penal Law § 70.00(2)(c), (3). Barnard's sentence clearly was within the pertinent guidelines. Thus, his

claim as to the harshness of the sentence presents no claim of a constitutional dimension for this Court to review.

## CONCLUSION

For the reasons stated above, William A. Barnard, Jr.'s petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Barnard has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
         VICTOR E. BIANCHINI
      United States Magistrate Judge

DATED:        September __, 2006
              Buffalo, New York.